**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JUAN FABIAN CHAVEZ,

       Plaintiff,

vs.                                No. CIV 11-1008 JB/LAM

BOARD OF COUNTY COMMISSIONERS
OF SIERRA COUNTY, SIERRA COUNTY
DETENTION CENTER, SUPERVISOR
DETENTION OFFICER JOHN DOE, MEDICAL
DETENTION OFFICER DAVID ESTAVILLO,
DETENTION OFFICER JOHN DOE, and
DETENTION OFFICER SGT. C. CHAVEZ,
each officer individually and each in their official capacities,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss, filed February 7, 2012 (Doc. 16).[1]  The Court held a hearing on May 31, 2012.  The primary issues are: (i) whether the Court should dismiss Defendant Sierra County Detention Center from the lawsuit where Plaintiff Juan Fabian Chavez concedes he is not alleging that its actions violated his constitutional rights; (ii) whether the Court should dismiss J. Chavez's Civil Complaint for Damages, filed August 22, 2011 (Doc. 1-1), in its entirety and without prejudice, because it does not meet the requirements of rule 8(a) and rule 12(b)(6) of the Federal Rules of Civil Procedure; and (iii) whether the Court should exercise supplemental jurisdiction over J. Chavez's state law claims. Because a government entity can be held liable under 42 U.S.C. § 1983 only for its own acts or

---

[1]Defendants' Motion to Dismiss was brought on behalf of all Defendants in this case except for Supervisor Detention Officer John Doe and Detention Officer John Doe.  The Court will, therefore, refer to all of the Defendants except for the two J. Does collectively as "Defendants" throughout this Memorandum Opinion and Order.

policies, and not for the conduct of its employees, the Court will dismiss the Sierra County Detention Center from the lawsuit.[2]  Because the Court finds that J. Chavez's right to be provided adequate medical care as a pretrial detainee is protected under the Fourteenth Amendment of the United States Constitution, rather than under the Eighth Amendment, as he pleaded, the Court will grant the Defendants' Motion to Dismiss without prejudice to his repleading and allow J. Chavez ten days to fix the deficiencies in his complaint and re-file.  With only state law claims remaining after dismissal of the § 1983 claims, the Court will not at this time exercise supplemental jurisdiction over the state law claims in Count III and Count IV, and will dismiss the claims without prejudice to repleading.

## FACTUAL BACKGROUND

On September 6, 2009, J. Chavez's vehicle was stopped just outside of the Sierra County Detention Center ("SCDC").  See Complaint ¶ 7, at 3.  J. Chavez was booked into the SCDC.  He informed the officers and SCDC personnel that he was diabetic and had high blood pressure, that he needed insulin and Glucophage[3] daily, and that his medications were in his vehicle.  See Complaint ¶ 11, at 4.  J. Chavez was put in a cell.

Every thirty minutes, a detention officer made a walk-through of the cell block.  Over the next forty-eight hours, J. Chavez asked every detention officer that he saw to help him get his

_____

[2]J. Chavez also names Sierra County Detention Center as a defendant in the state claims that he brings. At the hearing, however, J. Chavez withdrew those claims against Sierra County Detention Center, conceding that the proper way to sue a state entity in New Mexico is by suing the Board of County Commissioners of the county within which the detention center is located.  See Transcript of Hearing at 27:8-13 (May 31, 2012)(Court, Valdez).

[3]Glucophage is a brand name for metformin hydrocloride, distributed by Bristol-Myers Squibb.  They "are oral antihyperglycemic drugs used in the management of type 2 diabetes." Physician's Desk Reference 1079 (57th ed., Thompson PDR 2003).

medication to avoid grave illness.  See Complaint ¶ 13-14, at 4.  He made written requests in addition to the verbal requests.  See Complaint ¶ 19, at 5.  J. Chavez made specific requests to Defendant Sergeant C. Chavez.  See Complaint ¶ 17, at 5.

Some of the detention officers said that they would notify their supervisors.  Detention Office Defendant John Doe -- a short thin male with small brown mustache -- became agitated with J. Chavez's numerous requests, angrily shouted at J. Chavez, shook his clinched fist at him, and said he was "sick and tired of him." Complaint ¶ 20, at 5.

On September 8, 2009, another inmate in the cell summoned for help, as J. Chavez was disoriented.  Defendant David Estavillo responded.  See Complaint ¶ 22, at 6.  He asked J. Chavez several questions about his diabetes.  J. Chavez restated that his primary care doctor was Jose Baca, and that he needed Novolin[4] and Glucophage.  Estavillo argued with J. Chavez and left without assisting him, obtaining medication for him, or providing medical care for him.  See Complaint ¶23, at 6.

On September 10, 2009, J. Chavez became extremely ill; he was dizzy, had blurred vision, and was trembling.  J. Chavez got up from his bunk to summon for help, but blacked out and fell.  See Complaint ¶ 25, at 6.  When he revived, several detention officers were around him, including John Doe Supervisor.  J. Chavez complained of pain to his ankle, shoulder, and back.  See Complaint at ¶ 26, 6-7.  He was put in a wheel-chair and moved to a "single" cell.  Photographs were taken.  He was not provided care for his injuries.  He was then taken in front of a Magistrate via a video arraignment, where the Magistrate dismissed the charges against him.  See Complaint ¶ 28, at 7.  After his release, the pain in J. Chavez's ankle and shoulder continued to increase.  See

_____

[4]Novolin is a brand-name for insulin, produced by Novo Nordisk, which the patient injects at periodic periods prescribed by the patient's doctor.  See Physician's Desk Reference, at 2347.

Complaint ¶ 31, at 7. When he sought medical attention for these injuries, J. Chavez was told that he had broken a small bone in his ankle and he had torn his rotator cuff. <u>See</u> Complaint ¶ 32, at 7.

## PROCEDURAL BACKGROUND

J. Chavez filed his Civil Complaint for Damages in the Seventh Judicial District Court, County of Socorro, State of New Mexico, on August 22, 2011.  <u>See</u> Doc. 1-1 ("Complaint"). He asserts various causes of action against the Defendants, including: (i) Count I - Violation of 42 U.S.C. § 1983 for Failure to Provide Medical Treatment to an Inmate based on an alleged failure to provide medication for sugar diabetes; (ii) Count II - Violation of 42 U.S.C. § 1983 for Failure to Provide Medical Treatment to an Inmate based on an alleged failure to provide medical treatment for Chavez' ankle and shoulder injuries; (iii) Count III - New Mexico State Tort Claim for negligence; and (iv) Count IV - Spoliation of Evidence.  <u>See</u> Complaint at 9-11.  On November 14, 2011, the Defendants filed their Notice of Removal to remove this case to federal court.  <u>See</u> Notice of Removal at 1 (Doc. 1).

On February 7, 2012, the Defendants filed their Defendants' Motion to Dismiss.  <u>See</u> Doc. 16 ("Motion to Dismiss").  They seek dismissal of all J. Chavez's claims against them. The Defendants first claim that dismissal of J. Chavez's entire Complaint is warranted, because it fails to meet the pleading standards that rule 8 of the Federal Rules of Civil Procedure requires.  <u>See</u> Motion to Dismiss at 1.  The Defendants contend that the Court should dismiss the claim against SCDC, because "the SCDC is not a 'person' within the meaning of 42 U.S.C. § 1983 . . ., and because it is not an entity separate and distinct from Sierra County." Motion to Dismiss at 1  They claim that the Court should dismiss Counts I and II, the 42 U.S.C. § 1983 claims and associated prayers for punitive damages, against "all individual capacity defendants, with prejudice," because the individuals are entitled to qualified immunity.  Motion to Dismiss at 1.  The Defendants assert

that the Court should dismiss the punitive damage claims based on 42 U.S.C. § 1983 against Sierra County and all official capacity Defendants, because "punitive damages are not properly awarded under § 1983 against municipalities and official capacity defendants."  Motion to Dismiss at 2. Dismissal of Counts I and II against all official capacity defendants is appropriate, they argue, because the Defendants are "not necessary parties in their official capacities."  Motion to Dismiss at 2.  For the state law claims in Counts III and IV, the Defendants contend that, if the Court dismisses all the federal claims with prejudice, the Court has discretion to decline supplemental jurisdiction and, alternatively, that the Court should dismiss all state law claims based on the New Mexico Tort Claims Act, N.M.S.A. 1978 §§ 41-4-1 to 30 ("NMTCA") for failure to allege compliance with N.M.S.A. 1978 § 41-4-16,  the NMTCA's mandatory notice provision.  Motion to Dismiss at 2, 3.  They also assert that: (i) dismissal of the spoliation claim is appropriate, because, even if the tort of spoliation occurred, it is not a tort for which New Mexico has waived sovereign immunity under  the NMTCA, and (ii) a failure to record is not an element of the tort of spoliation. See Motion to Dismiss at 2,3.  The Defendants assert that dismissal of Counts III and IV against Sierra County is appropriate, because Sierra County is not a "law enforcement officer" under N.M.S.A. 1978 § 41-4-12.  Motion to Dismiss at 3.  They argue that dismissal of state law claims for punitive damages is appropriate, because punitive damages are not properly awarded under NMTCA.  See Motion to Dismiss at 3.

On May 3, 2012, J. Chavez filed Plaintiff's Response to Defendants' Motion to Dismiss Complaint (Edited Version).[5]  See Doc. 26 ("MTD Response").  He asserts that, if the Complaint

---

[5]On March 5, 2012, J. Chavez filed his Response to Motion to Dismiss.  See Doc. 26.  The Response to Motion to Dismiss was thirty-five pages long, and the Defendants subsequently moved to strike Chavez's response, as it exceeded the twenty-four pages that D.N.M.LR-Civ. 7.5 allows. The Court, after a hearing on the motion to strike, denied Defendants' motion and granted Chavez

fails to meet the pleading standards set out in rule 8, the proper relief is to allow him to amend the pleading, rather than dismissing his claims with prejudice.  <u>See</u> MTD Response at 3.  He contends, however, that his Complaint meets the rule 8 requirements, because it states the factual basis for the claims, states the legal grounds upon which he is relying to bring the claims, and sufficiently identifies "two 'classes' of defendants in this case," institutional defendants and individual defendants, further identifying each individual defendant separately.  MTD Response at 4-5.  J. Chavez further asserts that actions against the government agency is allowed under a respondeat superior theory under the NMTCA, thus not requiring the plaintiff to name the individual actors to sufficiently state a claim for relief.  <u>See</u> MTD Response at 5 (citing <u>Lopez v. Las Cruces Police Department</u>, 2006-NMCA-074, 137 P.3d 670).

J. Chavez alleges that his Complaint alleges facts, when accepted as true, sufficient to show that the individual Defendants are not entitled to qualified immunity, because his allegations show that the Defendants violated his right, as a detainee, to be provided adequate medical care.  <u>See</u> MTD Response at 9.  He contends that his Complaint sufficiently shows that both the objective component and subjective component of the deliberate indifference test are met, because he "avers that he informed the detention authorities that he was diabetic; . . . [told] the officers he gets very ill if he does not take his medication on a daily basis; . . . and they d[id] nothing."  MTD Response at 10-11.  J. Chavez argues that the Defendants' contention that he is alleging liability based on negligence, rather than deliberate indifference, mischaracterizes the claims; he asserts, rather, that he is alleging negligence for the NMTCA tort claims, but also alleges facts to show deliberate indifference for the § 1983 claims.  <u>See</u> MTD Response at 11-12. J. Chavez concedes that the Court

---

leave to amend his response.  <u>See</u> Memorandum and Opinion and Order at 1-2, filed May 30, 2012 (Doc. 52).

should dismiss his § 1983 claims against Defendants Sierra County and SCDC, because they fail to allege that his civil rights violations were the result of an official policy, regulation, ordinance, or custom, admitting that "Sierra County, the Sierra County Detention Center and the Board of County Commissioners are named in Plaintiff's complaint only pursuant to the NMTCA claims." MTD Response at 13-14. He states, however, that "[t]he Court should not rule upon Defendants' motion to dismiss the claims against Sierra County until Defendants have fully complied with their Rule 26 initial disclosure obligations," reasoning that the disclosures may "establish a policy, custom, or practice responsible for violating the plaintiff's constitutional rights." MTD Response at 17.

J. Chavez concedes that the Court should dismiss SCDC as a defendant. See MTD Response at 17 ("Plaintiff does not oppose the dismissal of the Sierra County Detention Center."). He concedes that punitive damages cannot be awarded against a municipality, but asserts that they can be awarded against the Defendants in their official capacity, because punitive damages can be awarded against law enforcement officials if they act with evil motive or intent, or with reckless or callous indifference to the plaintiff's rights. See MTD Response at 18 (citing Smith v. Wade, 461 U.S. 30 (1983)). J. Chavez thus asks the Court to delay ruling on all § 1983 claims against the individual Defendants in their official capacity, alleging that C. Chavez "probably acted with malice or evil motive or intent when she told Plaintiff that she was not going to lose her job" because of his medical requests, and that "John Doe Detention Officer probably acted with malice as he shouted at Plaintiff and shook his fist at him." MTD Response at 18-19.

In regards to the state law claims, J. Chavez "does not disagree" that, if the Court dismisses all of the federal law issues, "the court should simply remand the case and its remaining state law issues to the States District Court." MTD Response at 19. J. Chavez disagrees that the Court should not dismiss the state law claims because of insufficient pleading, arguing that his state law claims

are sufficiently pled against all individual Defendants and against Sierra County, because of the availability of respondeat superior under the NMTCA.  <u>See</u> MTD Response at 20.  He argues that the Court should not dismiss the spoliation claim, because, while it is true that New Mexico has not waived sovereign immunity for the tort of spoliation, given that sovereign immunity is only available for government employees acting within the scope of their employment, C. Chavez can still be individually liable, because she was acting outside the scope of her employment when she committed the tort of spoliation.  <u>See</u> MTD Response at 20.  J. Chavez does concedes, however, that failing to document evidence is not an element in the tort of spoliation and "does not contest the request to dismiss for 'not documenting circumstances.'"  MTD Response at 20.  In regards to the Defendants' claim that the Court should dismiss Sierra County from Count III, the state law tort claim, J. Chavez contends that a plaintiff does not need to name the particular individual defendants who committed the tort to recover under the NMTCA, because "actions against the governmental agencies [is] proper for redress of torts committed by their employees."  MTD Response at 21.  He concedes that punitive damages are not awardable under the NMTCA, but that punitive damages could be awarded against C. Chavez if it is found that she was acting outside the scope of her employment when she committed the spoliation of the evidence.  <u>See</u> MTD Response at 22.  Finally, J. Chavez asserts that, while a "tort claim notice to Sierra County was mandatory," in order to bring a NMTCA claim against Sierra County, "pleading compliance" with the mandatory notice "is not."  MTD Response at 22.

The Defendants filed Defendants' Reply to Plaintiff's Response (Edited) to Defendants' Motion to Dismiss on May 16, 2012.  <u>See</u> Doc. 45 ("MTD Reply").  The Defendants assert that J. Chavez fails to respond to certain of their arguments or concedes some, and the Court should therefore dismiss the claims.  <u>See</u> MTD Reply at 1.  First, they contend that the Court should dismiss

all claims against Defendant Board of Commissioners of Sierra County, because J. Chavez conceded

he is not alleging civil rights violations against Sierra County and SCDC "based on official policy,

regulation, ordinance, or custom."  <u>See</u> MTD Reply at 1-2.  Second, they point out that he "'does

not oppose dismissal of the Sierra County Detention Center' as a Defendant."  MTD Reply at 2

(quoting MTD Response at 17).  Third, they point out that J. Chavez concedes both that the Court

should dismiss all punitive damages against Sierra County because it is entitled to immunity, and

that the Court should dismiss his claims against C. Chavez and Estavillo alleged against them in

their official capacities because they  "are not 'official capacity' claims."  MTD Reply at 2 (quoting

MTD Response at 19).  The Defendants point out that J. Chavez agrees with them that, if the Court

dismisses all of the federal claims against the Defendants, the Court should remand the case to state

court to determine their state claims.  <u>See</u> MTD Reply at 2.  Finally, the Defendants assert that J.

Chavez concedes that the Court should dismiss the spoliation-of-evidence claim against C. Chavez,

and that the Court should dismiss all punitive damages claims based on state law against all

Defendants, because "'punitive damages are not awardable,' under the [NMTCA]" MTD Reply at

3.

        The Defendants assert that J. Chavez's contention that his Complaint adequately states a

claim under rule 8(a) misstates the required specificity in pleading.  <u>See</u> MTD Reply at 5.  They

assert that the allegations in Counts I and II do "<u>not</u> specify <u>which</u> Defendant is individually, or

officially, liable for the explicit claims of 'failure to provide medication of sugar diabetes' (Count

I) or 'failure to provide medical treatment for injuries to ankle and shoulder' (Count II)," and that

the court should dismiss the Complaint because "[i]t is impossible, from the face of Plaintiff's

Complaint, to determine which particular Defendant Plaintiff is intending to hold liable for which

alleged civil rights violation."  MTD Reply at 6 (emphasis in original).  They contend that this

failure to identify particular Defendants, and the use of the general phrase "the Defendants" in the federal law allegations, also fails to meet the pleading requirements to plausibly show that C. Chavez and Estavillo are not entitled to qualified immunity.  MTD Reply at 8.  The Defendants also contend that the Court should dismiss J. Chavez' Complaint pursuant to rule 12(b)(6), because his claims "do not articulate the required objective and subjective components necessary to properly allege a civil rights violation based on inadequate medical treatment or care."  MTD Reply at 6. They argue that the failure to allege sufficient facts to make a plausible claim that the Defendants' acts meet both the objective and subjective components "is fatal."  MTD Reply at 7.  The Defendants assert that J. Chavez alleges only that the Defendants were negligent and that his contention that the negligence allegation is only in regard to the state law tort claim is "illogical," because J. Chavez is then alleging two different levels of culpability, negligence and deliberate indifference, for the same conduct.  MTD Reply at 7.

The Defendants argue that J. Chavez' claims for punitive damages fail to state claims upon which relief can be granted.  <u>See</u> MTD Reply at 8-9.  First, they assert that plaintiffs cannot recover punitive damages from government employees sued in their official capacities. <u>See</u> MTD Reply at 9 (citing <u>Hill v. Shelaner</u>, 924 F.2d 1370 (7th Cir. 1991); <u>Colvin v. McDougall</u>, 62 F.3d 1316 (11th Cir. 1995); <u>Mitchell v. Dupnik</u>, 75 F.3d 517 (9th Cir. 1996)).  They also contend that, while punitive damages may be imposed upon a government employee sued individually, "such damages must be 'based on the defendant's personal financial resources,'" the Court does not have the ability to determine the financial resources of "Supervisor Detention Officer John Doe" or "Detention Officer John Doe," and the Court should therefore dismiss the claim. MTD Reply at 9-10.  The Defendants assert that the Court should dismiss the punitive damages claims against the personal-capacity defendants, because the conduct alleged -- that John Doe Detention Officer yelling and shaking his

fist at J. Chavez, and C. Chavez saying that J. Chavez' medical claims would not cost her job because the records would be lost -- does not state a plausible claim for an intentional, malicious civil rights violation.  See MTD Reply at 10.  Finally, they argue that J. Chavez's argument that "'there is no state law requirement that individual acts be attributed to an individual defendant,' . . . ignores the federal maxim that state law claims in federal court are measured by the same pleading standards as are federal law claims."  MTD Reply at 10-11.  The Defendants contend, rather, that the federal rule 8 and rule 12(b)(6) standards apply to the state claims, and that the Court should therefore dismiss the state claims for the same insufficiencies in pleading as the federal claims.  See MTD Reply at 11.

The Court held a hearing on May 31, 2012.  The Defendants stated that the "crux" of their argument is that the Court should dismiss J. Chavez's Complaint, because it does not meet rule 8(a)'s pleading requirements, and because it fails to state a claim upon which relief can be granted. See Transcript of Hearing at 4:11-14 (May 31, 2012)(Lovett)("Tr.").[6]  They contended that, because J. Chavez's Complaint generally discusses the Defendants in Count I and Count II of the Complaint, his Complaint fails to meet rule 8(a)'s notice requirement.  See Tr. at 4:15-17 (Lovett).  They asserted that, even though J. Chavez's Complaint sets out some factual allegations against C. Chavez, Estavillo, and the Defendant John Does in the "General Allegations," J. Chavez fails to allege the particular Defendant or Defendants he alleges violated his constitutional rights in Count I and Count II, J. Chavez's  Complaint fails to adequately give notice to the particular Defendants of the claims against them and thus does not meet rule 8(a)'s pleading requirements.  See Tr. at 5:2-18 (Lovett).  They argued that, even if the Court finds that the Complaint is sufficient to meet the

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

notice requirements of rule 8(a), J. Chavez still fails to state a claim upon which relief can be granted in Count I and Count II, because he does not plead sufficient allegations to plausibly claim that the Defendants violated his constitutional rights.  <u>See</u> Tr. at 6:12-16 (Lovett).  They stated that, because Count I and Count II allege a constitutional violation based on the Defendants' "failure to provide medical treatment to an inmate," J. Chavez must plead and prove deliberate indifference. <u>See</u> Tr. at 6:12-6:24 (Lovett). They contended that he does not allege any of the Defendants' acts meet both the subjective and objective elements of deliberate indifference.  <u>See</u> Tr. at 6:12-7:3 (Lovett).  The Defendants argued that J. Chavez cannot plausibly claim that the Defendants acted with deliberate indifference, because Count III of the Complaint states that "[t]he Defendants' actions and omissions rise to the level of negligent conduct," and the allegations of negligence "must be applicable to the rest of the Complaint itself, since it's mutually exclusive from the other types of culpable states of mind [such as] reckless indifference or gross negligence or deliberate indifference."  Tr. at 7:7-13 (Lovett).

The Court asked if it correctly understood that Defendants' two main arguments for dismissal of the Complaint as a whole are that J. Chavez fails to differentiate between defendants within Count I, Count II, and Count III, and that he fails to sufficiently allege the scienter requirements for deliberate indifference.  <u>See</u>  Tr. at 8:1-4 (Court).  The Defendants agreed that those are their arguments, but clarified that they argue J. Chavez must differentiate, not only between C. Chavez and Estavillo, but also between the two John Doe Defendants.  <u>See</u> Tr. at 8:5-10:25 (Court, Lovett).  The Defendants stated that the problem with not specifically identifying which individual is alleged to have violated J. Chavez's rights by either failing to provide him with his diabetes medication, or failing to provide him with medical treatment for injuries to his ankle and shoulder, is that the Defendants cannot look to the Complaint for notice as to what facts or

circumstances J. Chavez is alleging gave the particular officer notice of J. Chavez's serious medical risk, whether the diabetes or the injuries, and what facts or circumstance show that the particular officer understood and disregarded that serious medical risk.  See 14:16-25 (Lovett).

J. Chavez responded that, although the general allegations are enough to state a claim upon which relief can be granted, he delineates the claims into the two different § 1983 claims, the state law claim, and the spoliation claim, to provide more specificity of his claims and to give notice to the Defendants.  See Tr. at 15:21-17:1 (Valdez).  He asserted that the Defendants mischaracterize the notice standard that rule 8 requires.  See Tr. at 17:1-7 (Valdez).  He contended that, although an individual paragraph within one of the counts may not specify a particular Defendant performing the alleged conduct, when the Complaint is taken as a whole, the context gives the Defendant implicated in that paragraph the required notice of the allegation against that Defendant.  See Tr. at 17:2-7 (Valdez).  J. Chavez also contended that his Complaint does allege sufficient facts to make out a plausible claim for deliberate indifference.  He stated that his Complaint alleges that he asked for medication consistently, often through written requests, and gave the name of his medication; he asserted that such notice meets the objective component of a serious medical risk.  J. Chavez alleges further that each and every officer who whom he complained denied his request for the medication; he asserted that these denials meet the  subjective component of acting with reckless indifference to his medical needs.  See Tr. at 18:10-20 (Valdez).

The Court asked J. Chavez if there are any facts not in his Complaint that he could add to the Complaint to give more specificity to his claims.  See Tr. at 21:4-8 (Court).  J. Chavez replied that he could "add paragraphs showing where each of the individuals are implicated in Count I, and where the individuals are counted in Count II," and he could also add specificity  "now know[ing] that at least one of the paper documents outlining the request for medical aid is in existence."  Tr.

at 21:12-22:2 (Valdez, Court).  When the Court asked the Defendants to respond to whether allowing J. Chavez to amend his Complaint would help overcome their contention that the Complaint fails to state a claim upon which relief can be granted, the Defendants replied that "specifically nam[ing] which specific defendants were part of a specific action or omission under specific counts" would seem to get the Complaint closer to the United States Court of Appeals for the Tenth Circuit's requirements for § 1983 claims.  Tr. at 22:6-14 (Court, Lovett).

When the Court asked the Defendants to go to their argument for dismissal of SCDC because it is not a person under § 1983, the Defendants stated that they believed J. Chavez had conceded this issue.  See Tr. at 26:23-27:5 (Court, Lovett).  J. Chavez replied that he has conceded this issue and the Court thus dismissed Sierra County Detention Center out of the case with J. Chavez's consent. See Tr. at 27:9-16 (Valdez, Court).

The Court moved onto the Defendants' arguments that the Court should dismiss the § 1983 claims in Count I and II, and the punitive damages claims, in light of the Defendant officers' qualified immunity.  The Court asked the Defendants if they could clarify the standard for J. Chavez's constitutional rights as a pretrial detainee.  See Tr. at 31:10-15 (Court).  The Defendants stated that, in the Tenth Circuit, "pretrial detainees are entitled to the same degree of protection against denial of medical attention to which prisoners are entitled under the [Eighth] Amendment," but argued that J. Chavez's Complaint fails to state a claim upon which relief can be granted, because the Complaint never states that the Defendants violated J. Chavez's Fourteenth Amendment rights as a pretrial detainee.  Tr. at 32:12-15 (Lovett).  The Court then asked J. Chavez if he agreed that his Complaint "frames [his] federal claims as violations of the Eight Amendment," when he is not covered by the Eighth Amendment.  Tr. at 33:13-15 (Court).  J. Chavez contended that he believes the Eighth Amendment also covers pretrial detainees or, alternatively, that pretrial detainees

are entitled to the same level of protection as inmates.  <u>See</u> Tr. at 34:1-10 (Valdez).  The Court replied that, even though it may be that pretrial detainees are entitled to the same protection under the Due Process Clause of the Fourteenth Amendment as inmates under the Eighth Amendment, the Court was worried that it would have to dismiss the Complaint, because J. Chavez sued for violations as an inmate, thus bringing the claims under the Eighth Amendment.  <u>See</u> Tr. at 34:12-17 (Court).  The Court asked J. Chavez if he thought it would be prudent for the Court to dismiss the remaining federal claims without prejudice, allowing him to correct the claims and bring them under the Fourteenth Amendment, while also allowing him to separate out the Defendants in the Complaint.  <u>See</u> Tr. at 34:15-35:8 (Court).  J. Chavez replied that, while he still believes that he could find a case "directly on point that says that pretrial detainees have [Eighth Amendment] claims," he would file an amended complaint if directed to do so and "could do a better job."  Tr. at 35:11-24 (Valdez).

       The Court told J. Chavez and the Defendants that it was thus inclined to grant the Defendants' Motion to Dismiss without prejudice to J. Chavez filing an amended complaint, but asked if the parties would like to argue the rest of the issues in the Motion to Dismiss.  <u>See</u> Tr. at 36:21-37:6 (Court).  Both J. Chavez and the Defendants agreed that dismissing the claims seemed proper at this time, and that to argue for the rest of the issues in the motion to dismiss, when J. Chavez would likely rectify many of the issues in his new Complaint, would not be a good use of judicial economy.  <u>See</u> Tr. at 37:12-38:14 (Lovett, Court, Valdez).  When the Court asked if there was anything further the parties wished to address before the Court concluded the hearing, J. Chavez stated that he wished to address whether the Court's Order to stay discovery still stood.  <u>See</u> Tr. at 41:2-6 (Court, Valdez).  The Defendants contended that it would be improper to reopen discovery when the Court was going to grant their motion to dismiss and effectively dismiss the case for the

time being, and the Court should wait until there is a new Complaint before the Court.  <u>See</u> Tr. at
41:8-42:3 (Lovett).  The Court asked the parties if they would agree to an Order granting the
Defendants' Motion to Dismiss without prejudice to file an amended pleading, allowing J. Chavez
ten days to file his amended pleading, and stating within that Order that, once he files the Amended
Complaint, the Court will lift the stay on discovery.  <u>See</u> Tr. at 42:4-11 (Court). Both J. Chavez and
the Defendants stated that they agreed to such an Order.  <u>See</u> Tr. at 42:13-25 (Court, Lovett,
Valdez).

### <u>LAW REGARDING RULE(12)(b)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon
which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests
the sufficiency of the allegations within the four corners of the complaint after taking those
allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency of
a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept
as true all well-pleaded factual allegations in the complaint, view those allegations in the light most
favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u>
<u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)("[O]nly if a reasonable
person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant
prevail on a motion to dismiss.");  <u>Smith v. United States</u>, 561 F.3d 1090, 1098 (10th Cir.
2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded
factual allegations in a complaint and view these allegations in the light most favorable to the
plaintiff.")(quoting <u>Moore v. Guthrie</u>, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels
and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted).

      To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted).

### LAW REGARDING 42 U.S.C. § 1983

      Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute.  See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . .").  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege:  (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Aikins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public School Dist., 716 F.Supp.2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  The Supreme Court of the United States has made clear, that in alleging a § 1983 action against a government agent in the agent's individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.

## LAW REGARDING SUBSTANTIVE DUE-PROCESS CLAIMS

The Fourteenth Amendment's Due Process Clause provides that "no State shall . . . deprive

any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.

In general, state actors may be held liable under § 1983 only for their own affirmative acts that

violate a plaintiff's due process rights, and not for third parties' acts.  See Robbins v. Oklahoma, 519

F.3d 1242, 1251 (10th Cir. 2008)(citing DeShaney v. Winnebago County of Dep't of Soc. Servs.,

489 U.S. 189, 197 (1989)).  "[N]othing in the language of the Due Process Clause itself requires the

State to protect the life, liberty and property of its citizens against invasion by private actors."

DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 195.  The Due Process Clause

is not a guarantee of a minimal level of safety and security.  See DeShaney v. Winnebago County

Dep't of Soc. Servs., 489 U.S. at 195.  "As a general matter, . . . a state's failure to protect an

individual against private violence simply does not constitute a violation of the Due Process

Clause."  DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. at 197.  See Rost ex rel.

K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1125 (10th Cir. 2008))("Normally, state

actors are liable only for their own acts, and not the violent acts of third parties.").  Generally,

negligence does not trigger the Due Process Clause's protections.  See Davidson v. Cannon, 474

U.S. 344, 348 (1986).

      1.   **Exceptions to the General Rule.**

There are, however, two exceptions to this general rule.  First, the special-relationship

doctrine arises when the state has a custodial relationship with the victim, which triggers an

affirmative duty to provide protection to that individual.  See Christianson v. City of Tulsa, 332 F.3d

1270, 1280 (10th Cir. 2003); Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d 991, 994-995 (10th Cir.

1994).  Second, the danger-creation theory provides that a state may also be liable for an individual's

safety "only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability

to, or danger from private violence.'"  Robbins v. Oklahoma, 519 F.3d at 1251 (quoting Currier v.

Doran, 242 F.3d 905, 923 (10th Cir. 2001)).

>        **2.      Special-Relationship Doctrine.**

The first exception to the general principle that a state's negligent failure to protect an individual cannot trigger liability under the due-process clause is the special-relationship doctrine. A plaintiff must show the government's involuntary restraint to establish a duty to protect under the special-relationship doctrine.  See Liebson v. N.M. Corr. Dep't, 73 F.3d 274, 276 (10th Cir. 1996). "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)."  Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995). A pretrial detention is one such relationship.  See Lopez v. LeMaster, 172 F.3d 756, 759 n. 2 (10th Cir. 1999); Liebson v. N.M. Corr. Dep't, 73 F.3d 274, 277 (10th Cir. 1996)("[I]t [is] clearly established that state officials had a duty to protect individuals whom they had taken involuntarily into their physical custody and control.").

>        **a.      Due-Process Clause Rights of Pretrial Detainees.**

The special-relationship doctrine imposes upon jail officials the responsibility to take "reasonable measures to insure the safety of the [detainees]."  Lopez v. LeMaster, 172 F.3d at 759. "In fact, the due process rights of a person in [this] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Mass. Gen. Hosp., 463 U.S. at 244.  In the Tenth Circuit, a pretrial detainee's due-process clause rights parallel that of an inmate's Eight Amendment rights: "Pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment.  In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983."  Lopez v. LeMaster, 172 F.3d at 759 n. 2 (citing Bell v. Wolfish, 441 U.S. 520,

-20-

535 n. 16 (1979)).  See City of Revere v. Mass. Gen. Hosp., 463 U.S. at 244("[T]he State does not

acquire the power to punish with which the Eighth Amendment is concerned until after it has

secured a formal adjudication of guilt in accordance with due process of law.").  Accord Luckert v.

Dodge County, 684 F.3d 808 (8th Cir. 2012)("Under the Fourteenth Amendment, pretrial detainees

are entitled to at least as great protection as that afforded convicted prisoners under the Eighth

Amendment.").[7]

### b.    Prison Officials' Duty to Insure the Safety of Inmates and Detainees.

The Supreme Court has held that "a prison official's 'deliberate indifference' to a substantial

risk of serious harm" implicates the Eighth Amendment.  Farmer v. Brennan, 511 U.S. 825, 828

(1994).  "[N]either prison officials nor municipalities can absolutely guarantee the safety of their

prisoners," but "[t]hey are . . . responsible for taking reasonable measures to insure the safety of

inmates."  Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).  An official violates the Eighth

Amendment when two elements are met: (i) the official causes an injury that, objectively, is

"sufficiently serious," i.e., an injury that equates to the "denial of the minimal civilized measure of

life's necessities"; and (ii) the official has a "sufficiently culpable state of mind."  Farmer v.

---

[7]When government officials hold an individual in confinement before the formal adjudication
of that individual's guilt, the Eighth Amendment does not regulate the conduct of the government
officials confining that individual.  See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244
(1983).  As the Supreme Court has explained:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the
> constitutional guarantees traditionally associated with criminal
> prosecutions . . . . [T]he State does not acquire the power to punish with which the
> Eighth Amendment is concerned until after it has secured a formal adjudication of
> guilt in accordance with due process of law.

City of Revere v. Mass. Gen. Hosp., 463 U.S. at 244 (quoting Ingraham v. Wright, 430 U.S. 651,
671-672, n. 40 (1977)).

Brennan, 511 U.S. at 834 (internal quotation marks omitted).  The second condition represents the functional application of the deliberate indifference standard.  See Self v. Crum, 439 F.3d 1227, 1230 (10th Cir. 2006)(holding that prison officials violate detainees' due-process clause rights when the officials' "acts or omissions [are] sufficiently harmful to evidence deliberate indifference to serious medical needs")(quoting Estelle v. Gamble, 429 U.S. 87, 106 (1976)).

Analyzing whether the plaintiff has satisfied the first element, the objective element, "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such an injury to health will actually be caused." Helling v. McKinney, 509 U.S. 25, 36 (1993).  Courts should also consider "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. at 36 (emphasis in original).  "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." Helling v. McKinney, 509 U.S. at 36.  The Eighth Amendment does not protect against "de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson v. McMillian, 503 U.S. 1, 9-10 (1992)(internal quotation marks omitted)("That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.").

The second element regarding the government official's state of mind is a subjective inquiry. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Courts apply this subjective inquiry whether the allegations are that a "short-term" or "one-time" violation occurred, or that "continuing" or "systemic" violations occurred.  Wilson v. Seiter, 501 U.S. at 299.  A defendant has the requisite culpable state of mind under the subjective inquiry only where the defendant's conduct evidences conscious disregard of a substantial risk of harm.  See Self v. Crum, 439 F.3d at 1231.

> A prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Self v. Crum, 439 F.3d at 1231 (quoting Farmer v. Brennan, 511 U.S. at 837).  The Supreme Court

has stated: "With deliberate indifference lying somewhere between the poles of negligence at one

end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate

indifference with recklessness."  Farmer v. Brennan, 511 U.S. at 836.  For the purpose of Eighth

Amendment analysis, the Tenth Circuit has equated deliberate indifference with recklessness.  See

Belcher v. United States, 216 F.App'x 821, 823-24 (10th Cir. 2007)(unpublished)(quoting Smith

v. Cummings, 445 F.3d at 1258).

### c.      Detainee Suicide.

For a detainee suicide, a plaintiff must prove the prison official was deliberately indifferent

to the detainee's risk of suicide:

> Claims arising from a failure to prevent prisoner suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody. Thus, a plaintiff bringing such a claim must prove that his jailer was "deliberately indifferent to a substantial risk of suicide."

Gaston v. Ploeger, 229 F.App'x 702, 709-710 (10th Cir. 2007)(unpublished opinion)(quoting Barrie

v. Grand County, 119 F.3d 862, 869 (10th Cir. 1997)).  In Gaston v. Ploeger, the Tenth Circuit held

that the objective component of the test is always satisfied in the case of suicide, because the harm

suffered is "[o]bviously" sufficiently serious. 229 F.App'x at 710.  For the subjective component

to be met, however, the Tenth Circuit held that there must be evidence either that the prison official

had "knowledge that an inmate is suicidal" or the inmate must have been "an obvious suicide risk."

Gaston v. Ploeger, 229 F.App'x at 712. "[T]he threshold for obviousness is very high."  Gaston v.

Ploeger, 229 F.App'x at 710 (citing Perez v. Oakland County, 466 F.3d 416, 435-36 (6th Cir. 2006),

and Collins v. Seaman, 462 F.3d 757, 761 (7th Cir. 2006)).

### 3. Danger-Creation Exception.

The danger-creation exception to the rule that the Due Process Clause does not protect persons from the violative conduct of third parties applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). Under a danger-creation theory, there will be no § 1983 liability absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm." Uhlrig v. Harder, 64 F.3d at 573. To state a prima-facie case, the plaintiff must show that his or her danger-creation claim for due-process violations meets a six-part test: (i) the state and individual actors must have created the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious and known; and (v) the defendant must have acted recklessly in conscious disregard of that risk. See Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1126 (10th Cir. 2008).

The Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm. See Christiansen v. City of Tulsa, 332 F.3d at 1281. The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk." Medina v. City & County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992). The intent to place a person unreasonably at risk is present where the defendant "is aware of a known or obvious risk" creating a high probability that serious harm will follow, and the defendant nonetheless proceeds with a "conscious and unreasonable disregard of the consequences." Medina v. City & County of Denver, 960 F.2d at 1496.

4.      **What Shocks the Conscience.**

If either the special-relationship or danger-creation exception applies, the conduct of the state

actor must go beyond negligence to the point of "shocking the conscience." Johnson ex rel. Estate

of Cano v. Holmes, 455 F.3d 1133, 1142 (10th Cir. 2006)("The shocks the conscience standard

applies to both types of suits").  "[A] plaintiff must do more than show that the government actor

intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."

Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006) (quoting Moore v.

Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)).  "The plaintiff must demonstrate a degree of

outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."

Camuglia v. the City of Albuquerque, 448 F.3d at 1222-23 (quoting Uhlrig v. Harder, 64 F.3d 567,

574 (10th Cir. 1995))(internal quotations omitted).

> Establishing these limits advances "three basic principles highlighted by the
> Supreme Court in evaluating substantive due process claims: (1) the need for
> restraint in defining their scope; (2) the concern that § 1983 not replace state tort law;
> and (3) the need for deference to local policymaking bodies in making decisions
> impacting upon public safety."

Camuglia v. the City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

Whether the conduct shocks the conscience is an objective test, based on the circumstances,

rather than a subjective test based on the government actor's knowledge.  See James v. Chavez, 830

F.Supp.2d 1208, 1276 (D.N.M. 2011)(Browning, J.)(finding that the use of deadly force did not

shock the conscience even if the suspect did not have intent to harm the officer, because the officer

"had sufficient facts before him to conclude that there was a threat of serious physical harm" and

the "courts must evaluate a [government actor's] conduct objectively.").  Even where a government

acts with sufficient culpability for tort liability, perhaps warranting even punitive damages, the Court

has found that the government's conduct still failed to rise to the level of shocking the conscience.

See Schaefer v. Las Cruces Pub. Sch. Dist., 716 F.Supp.2d 1052, 1074-1075 (D.N.M. 2010)(Browning, J.)(finding that school's failure to act after three complaints about conduct that could "arguably be characterized as sexual assault," and then pointing out the plaintiff as the victim at a school assembly regarding the conduct, "may be worthy of remedy under tort law, and perhaps worthy of punishment in the form of punitive damages," but did not shock the conscience.)

Because "the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," County of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998)(quoting City of Revere v. Massachusetts Gen. Hospital, 463 U.S. at 244), a finding of deliberate indifference in a claim for failure to provide for a detainee's serious medical needs shocks the conscience as a matter of law:

> Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls. To be sure, we have expressly recognized the possibility that some official acts in this range may be actionable under the Fourteenth Amendment, and our cases have compelled recognition that such conduct is egregious enough to state a substantive due process claim in at least one instance. We held in City of Revere v. Massachusetts Gen. Hospital, 463 U.S. 239 . . . (1983), that the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. Since it may suffice for Eighth Amendment liability that prison officials were deliberately indifferent to the medical needs of their prisoners, . . . it follows that such deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial.

Cnty. of Sacramento v. Lewis, 523 U.S. at 849-50 (internal citations and quotations omitted).

## **RELEVANT LAW REGARDING SUPPLEMENTAL JURISDICTION**

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v.

Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

1.      **Supplemental Jurisdiction.**

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.  Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties whose insertion into the litigation is not supported by any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. 09-0540, 2011 WL 6013547, at *5 (D.N.M. Nov. 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.)).  In response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when

it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

**2.      District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1)      the claim raises a novel or complex issue of State law,
>
> (2)      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("Section 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. 08-0812, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See

Gudenkauf v. Stauffer Commc'ns, Inc., 896 F.Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

## ANALYSIS

To withstand a rule 12(b)(6) motion to dismiss for failure to state a claim, the non-moving party's complaint must state sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). Because J. Chavez concedes that SCDC is not a "person" for purposes of 42 U.S.C. § 1983 and, if the Court were to decide to exercise supplemental jurisdiction over the state law claims, cannot be held liable under state law, J. Chavez admits that Defendant SCDC cannot be liable for the misconduct alleged and thus does not oppose the Defendants' motion to dismiss Defendant SCDC with prejudice. J. Chavez brings Counts I and II, his § 1983 claims, alleging that the Defendants violated his rights by their "Failure to provide Medical Treatment to an Inmate" and asking redress under the Eighth Amendment as an inmate. At the time of the Defendants' alleged misconduct, however, J. Chavez was not an inmate, but rather was a pretrial detainee. The Tenth Circuit has held, however, that "[p]retrial detainees are protected under the Due Process Clause rather than the Eighth Amendment." Lopez v. LeMaster, 172 F.3d at 759 n. 2. The Court will therefore dismiss without prejudice J. Chavez's federal claims against the Defendants. Because no federal claims remain in this case, the Court will decline to exercise supplemental jurisdiction over the remaining state-law claims.

I.      **THE COURT WILL DISMISS THE § 1983 CLAIMS AGAINST SCDC.**

Section 1983 of Title 42 of the United States Code provides a cause of action against only "[p]erson[s]" who cause other persons to be deprived of any constitutional right. 42 U.S.C. § 1983. The law is well settled, however, that, while a municipal entity can be liable, it cannot be liable under § 1983 for the acts of others, but only for its own violations of a person's constitutional rights. See Nielander v. Board of County Comm'rs of the Cnty. Of Republic, Kansas, 582 F.3d 1155, 1170 (10th Cir. 2009)("A municipality is only liable 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'")(quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  See also Los Angeles Cnty., Calif. v. Humphries, 131 S. Ct. 447, 452 (2010)("[A] municipality [can] be held liable under § 1983 only for its own violations of federal law.")(quoting Monell v. Dep't of Soc. Servs., 436 U.S. at 694)).  In response to the Defendants' assertion that the Court should dismiss SCDC as a Defendant in this case, J. Chavez concedes that his Complaint "does not allege that plaintiff's civil rights violations were inflicted by the application of an official policy, regulation, ordinance or custom." MTD Response at 22-23.  The Court therefore dismisses the § 1983 claims against SCDC.

J. Chavez names both SCDC and the Board of Commissioners of Sierra County as defendants for the state law claims.  Because J. Chavez "does not oppose the dismissal of the Sierra County Detention Center" as a Defendant, see MTD Response at 17, the Court will dismiss SCDC as a Defendant, see Abalos v. Bernalillo Cnty. Dist. Attorney's Office, 105 N.M. 554, 559, 734 P.2d 794, 799 (Ct.App. 1987)(holding that the city is "the particular entity that operates the detention center and it would be the governmental entity responsible for the alleged harm. Accordingly, [the detention center] although perhaps not a separate agency, should be dismissed from the lawsuit.");

Wishneski v. Lea Cnty. Det. Ctr., No. CIV 11-1057 JB/WPL, 2012 WL 1688890, *2 (D.N.M. May 2, 2012)(Browning, J.)("[A] detention facility is not a person or legally created entity capable of being sued.")(quoting Aston v. Cunningham, 216 F.3d 1086, 2000 WL 796086, at *4 n. 3 (10th Cir.2000)(unpublished table decision)).

## II.    THE COURT WILL DISMISS THE § 1983 CLAIMS AGAINST C. CHAVEZ AND ESTAVILLO WITHOUT PREJUDICE.

The Defendants ask that the Court dismiss all § 1983 claims with prejudice against the individual Defendants, because they are entitled to qualified immunity. The Court finds that it is premature, however, to do so. The Supreme Court has made clear that a plaintiff must plead the correct constitutional provision underlying the § 1983 claim to state a valid claim:

> As we have said many times, § 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." In addressing a[] . . . claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed . . . . The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right . . . .

Graham v. Connor, 490 U.S. 386, 393-394 (1989)(quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979))(internal citations omitted). A § 1983 claim that brings an allegation with the wrong underlying constitutional amendment, therefore, is invalid on its face and must be dismissed even if the protections are the same under both constitutional provisions. See Anton v. Guarini, Civil Action No. 09-2899, 2010 WL 5258219, at *4-5 (E.D.Pa. Dec. 22, 2010)(holding that a complaint must be dismissed where the plaintiff alleged a violation of the Fourth Amendment, but because he was a pretrial detainee, he was protected under the Fourteenth Amendment rather than the Fourth or Eighth Amendment). See also Northington v. Jackson, 973 F.2d 1518, 1523 (10th Circ. 1992)(holding that the validity of a claim is judged by "which constitutional right is alleged to have been infringed . . . [and then] by reference to the specific standard which governs that

right.")(quoting <u>Graham v. Connor</u>, 490 U.S. at 394).  J. Chavez alleges violations of his right to be provided adequate medical care as "an inmate." Complaint at 9, 10.  J. Chavez was not an inmate at the time of Defendants' alleged wrongdoings, but was a pretrial detainee.  <u>See</u> Complaint at 7.

It is established that, while "the Eighth Amendment . . . serves as the primary source of substantive protection to convicted prisoners," or inmates, <u>Whitley v. Albers</u>, 475 U.S. 312, 327 (1986), The Fourteenth Amendment's Due Process Clause provides J. Chavez's protections and his right to be provided adequate medical care as a detainee:

> The rights of pretrial detainees, "those persons who have been charged with a crime but who have not yet been tried on the charge," are not controlled by the . . . Eighth Amendment because the Fifth and Fourteenth Amendments prohibit punishment "prior to an adjudication of guilt in accordance with due process of law.  The critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated."

<u>Berry v. City of Mukogee</u>, 900 F.2d at 1493 (quoting <u>Bell v. Wolfish</u> 441 U.S. 520, 535 (1979)).  The Court recognizes that, in the Tenth Circuit, the analysis of J. Chavez's right under the Fourteenth Amendment to be provided adequate medical care as a pretrial detainee is the same as that of an inmate under the Eighth Amendment.  <u>See</u> <u>Lopez v. LeMaster</u>, 172 F.3d at 759 n. 2 ("In determining whether appellant's rights were violated, however, we apply an analysis identical to that applied in Eighth Amendment cases.")(citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 n. 16 (1979)).

Nonetheless, when government officials hold an individual in confinement before the formal adjudication of that individual's guilt, the Eighth Amendment does not regulate the conduct of the government officials confining that individual.  <u>See</u> <u>City of Revere v. Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983)("Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . . [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it

has secured a formal adjudication of guilt in accordance with due process of law.")(quoting Ingraham v. Wright, 430 U.S. 651, 671-672, n.40 (1977)).  Because the Eighth Amendment did not regulate the Defendants' conduct, they therefore cannot be found liable in a § 1983 action that a detainee alleges stems from violations of the detainee's rights as an "inmate."  J. Chavez's Complaint thus fails to state a claim for which relief can be granted.

It may seem to be a technicality that J. Chavez's Complaint is invalid because he alleges rights as an inmate under the Eighth Amendment rather than as a detainee under the Fourteenth Amendment, because the analysis is identical in this case.  Section 1983, however, is a powerful tool that neither the parties nor the Court can take lightly.  A § 1983 claim is a powerful tool, not only because it allows persons alleging that their constitutional rights were violated redress against those persons who violated the rights while acting under color of law, but also because it causes many government employees and public servants to be brought into the courts against their will. Government officials are provided qualified immunity for their conduct while performing their duties.  See Roybal v. City of Albuquerque, No. CIV 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)("Qualified immunity protects federal and state officials from . . . 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'")(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  It is important, therefore, that plaintiffs provide to the Court accurate allegations of the correct constitutional right which the plaintiffs are alleging a specific defendant violated so that the Court can resolve the matter at the "earliest possible stage in litigation."  Pearson v. Callahan, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)).  Because J. Chavez failed to allege violations of his Fourteenth Amendment rights as a pretrial detainee, therefore, the Court dismisses his § 1983 claims under the Eighth Amendment -- Claim I and Claim II -- with prejudice, but will allow him to amend

to bring Fourteenth Amendment Claims.

## III.   THE COURT WILL NOT EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE CLAIMS AT THIS TIME.

Based on the Court's dismissal of Count I and II in J. Chavez's Complaint, there remain only two Counts in this case: Count III and Count IV.   Count III is a New Mexico State Tort claim, alleging that "[a]s a direct and proximate cause of Defendants' negligence the Plaintiff suffered physical injury and pain and suffering and possible permanent disability."   Complaint ¶ 51, at 9. Count IV alleges "spoliation of evidence[,] . . . actionable against Sgt. Chavez as a New Mexico Tort outside of the New Mexico Tort Claims Act." Complaint ¶ 56, at 10.

Section 1367(c)(3) of Title 28 of the United States Code provides: "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."   The Tenth Circuit reviews a district court's decision not to exercise jurisdiction under 28 U.S.C. § 1367(c) for abuse of discretion.   See Nielander v. Bd. of Cnty. Comm'rs, 582 F.3d 1155, 1172 (10th Cir. 2009).   The Tenth Circuit has held: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."   Koch v. City of Del City, 660 F.3d at1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).   The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.   Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.   The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c)

-35-

applies.  See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'"  Muller v. Culbertson, 408 F.App'x 194, 197 (10th Cir. 2011)(unpublished).

Both J. Chavez and the Defendants agree that "[w]hen the federal issue[s are] dismissed [the Court] should simply remand the case and its remaining state law issues to the State District Court," from which the Defendants removed it.  MTD Response at 30.  See Motion to Dismiss ¶ 6, at  2 ("Dismissal of all state law claims (Counts III and IV) is an appropriate exercise of the Court's discretion if it chooses to dismiss all federal law claims.").  The Court has determined that no federal claims currently remain in the case.  Count III and Count IV are both state law causes of action.  Given that both parties agree on remand if the Court dismisses all federal claims, and given the Tenth Circuit's guidance that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims," dismissing the remaining state law claims without prejudice is the appropriate resolution at this time.  Koch v. City of Del City, 660 F.3d at 1248 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156). The Court, therefore, dismisses the remaining state law claims without prejudice.

**IT IS ORDERED** that the Defendants' Motion to Dismiss, filed February 7, 2012 (Doc. 16), is granted. Plaintiff Juan Fabian Chavez's § 1983 claims -- Claim I and Claim II -- against Defendants under the Eighth Amendment of the United States Constitution are dismissed with prejudice, but the Court will allow him to file an amended complaint seeking similar relief under the Fourteenth Amendment.  With no remaining federal claims in the case, the remaining claims –

Claim III and Claim IV -- are dismissed without prejudice.  J. Chavez can amend his Complaint to address its deficiencies and re-file within ten days of this order.  If J. Chavez re-files within the ten day period, the Memorandum Opinion and Order, filed May 28, 2012 (Doc. 51), ordering a stay of discovery, is vacated and the stay of discovery is lifted on the day that J. Chavez files his Amended Complaint.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jose R. Coronado
Las Cruces, New Mexico

-- and --

G. Greg Valdez
Las Cruces, New Mexico

      *Attorneys for the Plaintiff*

Michael J. Thomas
Law Office of Michael J. Thomas, LLC
Las Cruces, New Mexico

-- and –

Raul A. Carrillo , Jr.
Daniel D. James
Steven L. Lovett
Carrillo Law Firm
Las Cruces, New Mexico

      *Attorneys for the Defendants*